In re BIBLE DELIVERANCE EVANGELISTIC CHURCH, Debtor.

Bankruptcy No. 82–04760K.

United States Bankruptcy Court, E.D. Pennsylvania.

April 24, 1984.

Kevin William Gibson, Philadelphia, Pa., for debtor.

John F. Horstmann, and George E. Pierce, Jr., Philadelphia, Pa., for Creditors' Committee.

## MEMORANDUM OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The sole issue remaining in this Chapter 11 case is the amount of compensation to be awarded to counsel for the Creditors' Committee. Counsel for the debtor argues that the fee claimed is excessive. For the reasons stated herein, we find that counsel for the Creditors' Committee has justified a fee award in excess of the standard compensation available to attorneys in routine bankruptcy cases.[1]

A petition under Chapter 11 of the Bankruptcy Code was filed by the debtor on October 5, 1982. Pursuant to Code Section 1103, members of the Creditors' Committee selected the law firm of Duane, Morris & Heckscher to represent the Committee. We approved their selection on April 13, 1983.

Information learned by counsel to the Committee at the first meeting of creditors on April 14th prompted counsel to file motions for appointment of a trustee and for turnover of assets of the estate. While these motions were pending, the debtor retained new counsel and a settlement agreement was reached in June, 1983. All creditors have been paid the full amount of their claims plus interest pursuant to the settlement agreement.

Counsel for the Committee played an active role in investigating the affairs of the debtor, negotiating the settlement, and overseeing the orderly distribution of funds to creditors from an escrow account. In view of the excellent results achieved on behalf of the creditors, counsel requests a fee of $44,674.50, which includes "bonus" compensation and compensation for time spent preparing the fee applications and appearing before the Court.

A total of four (4) fee applications were filed. We have compiled a summary of the fees and costs requested in each as follows:

(1) The first fee application covers the period from March 29 through July 31, 1983. The total number of hours listed is 169.1. Calculated at standard billing rates for the attorneys involved, 169.1 hours amounts to $17,148.50 in fees. Counsel, however, has requested bonus compensation at the rate of $200 per hour, which is equivalent to a fee request of $33,820, or $16,671.50 above the standard rate.

Costs are also requested in the amount of $767.99.

(2) The second fee application lists 10.4 hours expended between August 1, 1983 and September 20, 1983. At regular rates, 10.4 hours of work performed is equivalent to $970.50 in fees. However, counsel again requests bonus compensation at the rate of $200 per hour, which amounts to a fee request in the second application of $2,080, or $1,109.50 above the standard rate.

Costs in the second application are $57.90.

(3) The third fee application (also referred to as "Supplemental Application") contains a fee request of $7,278 for 124.9 hours of time spent exclusively on researching and preparing the first and second fee applications.

(4) The fourth and "final" application lists 21.9 hours of work performed between September 21 and November 2, 1983, of which

---

**1.** This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

21.2 hours again pertain to research and pursuit of attorney's fees. The fee requested in this application is $1,496.50.

Costs of $187.34 are also requested.

The fees in both the third and fourth applications were calculated at standard billing rates of the attorneys or legal assistants involved. No bonus compensation is requested.

## SUMMARY

**First Application**

| | |
|---|---|
| Date of services | March 29–July 31, 1983 |
| Hours | 169.1 |
| Costs | $767.99 |
| Fee at standard billing rates | $17,148.50 |
| Bonus compensation | 16,671.50 |
| Total Fee | $33,820.00 |

**Second Application**

| | |
|---|---|
| Date of services | August 1–September 20, 1983 |
| Hours | 10.4 |
| Costs | $57.90 |
| Fee at standard billing rates | 970.50 |
| Bonus compensation | 1,109.50 |
| Total Fee | $2,080.00 |

**Third Application**

| | |
|---|---|
| Date of services | March 29–September 20, 1983 |
| Hours | 124.9 |
| Fee at standard billing rates | $7,278.00 |

**Fourth Application**

| | |
|---|---|
| Date of services | September 21–November 2, 1983 |
| Hours | 21.9 |
| Costs | $187.34 |
| Fee at standard billing rates | $1,496.50 |

| | |
|---|---|
| Total hours for work on behalf of Committee | 180.2 |
| Total hours spent on fee applications | 146.1 (124.9 + 21.2) |
| Total hours | 326.3 |
| Total fee requested for time spent on fee applications | $8,698.50 ($7,278 + $1,420.50) |
| Total bonus compensation | $17,781.00 |
| Total fee exclusive of bonus compensation | $26,893.50 |
| Total fee exclusive of allowance for time spent on fee applications | $35,976.00 |
| Total fee, including bonus compensation and time spent on fee applications | $44,674.50 |
| Total Costs | $ 1,013.23 |

---

The debtor strenuously objects to the fee claimed and filed lengthy responses to each application. We have divided the debtor's objections into four (4) categories: (1) nunc pro tunc fees, (2) compensation for preparation of fee applications, (3) bonus compensation and (4) duplication of services.

## NUNC PRO TUNC FEES

The first issue raised by the debtor is the prior authorization rule. The debtor ar-

gues that all time prior to the date counsel was authorized by the Court to represent the Creditors' Committee is noncompensable on the basis of this Court's ruling in *In re Lewis*, 30 B.R. 404 (Bkrtcy.E.D.Pa. 1983).[2] Since counsel was elected by the Committee on March 29th, but not authorized by the Court until April 13, 1983, the debtor seeks a deduction of $1,608 from the fee claimed for 16.2 hours of services performed between March 29th and April 12, 1983.

■ In response to the debtor's objection, counsel for the Creditors' Committee filed an Application for Award of Counsel Fees "Nunc Pro Tunc". Ordinarily, we adhere to the strict rule enunciated in *Lewis, supra*, against nunc pro tunc fee awards. However, we believe counsel has demonstrated the existence of exceptional circumstances during the time period in question (March 29—April 12) requiring the immediate attention of counsel for the Creditors' Committee. The first meeting of creditors was already scheduled for April 14, 1983 at the time counsel was asked to represent the Committee. The chief operating officer of the debtor was ordered to appear for examination on that date or be held in contempt of Court. Many of the creditors believed that the debtor's chief operating officer was concealing assets and that the information in the Schedules and Statement of Affairs was incorrect. In order to prepare for the April 14th meeting, counsel could not sit back and await the outcome of its application for employment. It was necessary to begin investigating the financial position of the debtor at once. Furthermore, counsel acted with reasonable promptness in filing its application for employment. Our holding in this case is easily distinguished from the events in *Lewis, supra*, where the debtor's attorney did not seek Court approval of his employment until twenty (20) months

after the Chapter 11 petition was filed. Further, one of the real purposes of ruling against nunc pro tunc fee applications is to prevent various counsel from simultaneously representing and charging debtors, Creditors' Committees, etc. to the detriment of the creditors. This case is far different from the ordinary debtor's case and the net result of allowing fees to counsel prior to appointment is far outweighed by the necessities of this situation and the actions of the debtor which did not bring about an easy or early termination of this case.

In conclusion, counsel has adequately supported an award of counsel fees nunc pro tunc. No deduction will be made from the fee claimed under the prior authorization rule.

### COMPENSATION FOR PREPARATION OF FEE APPLICATIONS

Counsel for the Committee has requested compensation of $8,698.50 as part of the overall fee award for 146.1 hours of time spent preparing fee applications. Bankruptcy Rule 2016 requires that a person seeking interim or final compensation for services, or reimbursement of necessary expenses from the estate shall file with the court:

> "An application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

The debtor protests any form of compensation for preparation of fee applications on the basis of our previous rulings on this issue. *See e.g., In re Horn & Hardart Baking Co.*, 30 B.R. 938 (Bkrtcy.E.D.Pa. 1983); *In re Absco, Inc.*, 23 B.R. 250 (Bkrtcy.E.D.Pa.1982); and *In re Hotel Associates*, 15 B.R. 487 (Bkrtcy.E.D.Pa.1981) wherein we held that time spent preparing fee applications, researching fee issues, or appearing before the Court to defend fee

---

**2.** In *Lewis*, counsel for the debtor-in-possession did not seek Court approval of his employment by the debtor-in-possession pursuant to 11 U.S.C. § 327(a) and § 1107(a) until twenty (20) months after the Chapter 11 petition was filed. In the interim, the case was converted to Chap-

ter 7. We disallowed all fees claimed prior to conversion on the basis of the Third Circuit's rulings against nunc pro tunc fee awards in *In re Hydro Carbon Chemicals, Inc.*, 411 F.2d 203 (3d Cir.1969) and *In re Calpa Products Company*, 411 F.2d 1373 (3d Cir.1969).

applications, is not recoverable from the debtor's estate.

Counsel for the Committee advances the novel argument that such compensation should be allowed in this instance because the debtor is solvent and all creditors' claims have been satisfied in full.

The debtor's position is that the solvency or insolvency of the estate should not be a consideration—the same rule should be applied in all cases under the Bankruptcy Code.

We note that our previous rulings on this issue pertained exclusively to insolvent debtors. In deciding these cases, we relied on the guidelines set forth by the Third Circuit Court of Appeals for consideration of fee awards in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 111 (3d Cir. 1976) *(Lindy II)*, a non-bankruptcy, "common fund" case. The *Lindy II* rationale for not allowing attorneys to be compensated from the common fund for preparation of fee applications was recently interpreted by the Third Circuit in another case:

> *Lindy II* is an equitable common fund case. As such, attorneys' fees are paid out of the one overall fund, and any increase in the attorneys' fee award must necessarily result in a decrease in the plaintiffs' actual recovery. The rationale behind the rule permitting awards of attorneys' fees out of the fund in such cases is that the attorneys' services benefit the fund by creating, increasing or preserving it. See *Lindy II, supra*, 540 F.2d at 111. However, as the Court in *Lindy II* reasoned, an attorney's time expended in connection with the fee application or a fee appeal does not benefit the fund and hence does not benefit the plaintiff class. See *Id.* In fact, it is at that point that the attorney's interest becomes adverse to the interest of the class which he represents, see *Prandini I, supra*, 557 F.2d [1015] at 1020. To award attorneys' fees for services which do not benefit the fund would no longer comport with the policy of the equitable

fund doctrine, and we so held in *Lindy II*.

*Prandini v. National Tea Company*, 585 F.2d 47, 52–53 (3d Cir.1978).

Counsel for the Creditors' Committee does not dispute the applicability of the *Lindy II* rationale to bankruptcy cases where the debtor is insolvent because the common fund shared by attorney and client in *Lindy II* is quite similar to the limited funds available to creditors and attorneys in an insolvent bankruptcy estate. Once there is a solvent debtor, however, the rationale of *Lindy II* and other equitable fund cases ceases to apply because there is no longer any competing interest between attorney and client for the debtor's funds. When all creditors' claims have been satisfied in full, no harm can result to creditors' interests if the debtor is required to pay additional fees to counsel for the Creditors' Committee.

The same logic used by Courts in awarding attorneys' fees under federal statutes would seem to apply to bankruptcy cases where the debtor is solvent. In those cases where there is federal statutory authorization for attorney fee awards, time spent preparing fee applications is included in the overall fee awarded by the Court. *See Prandini, supra*, and *In re Danny Kresky Enterprise Corp. v. Magid*, 716 F.2d 215, 219 (3d Cir.1983). The logic for allowing this additional compensation was explained by the Court in *Prandini* as follows:

> In statutory fee award cases, the consideration of *Lindy II* and the equitable fund cases do not apply. Statutorily authorized fees are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiffs' interest. Hence, the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award. If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorneys' effective rate for all the hours expended on the case will be correspondingly decreased.

Recognizing this fact, attorneys may become wary about taking Title VII cases, civil right cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies ... Indeed courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee— *i.e.*, for time spent on the fee application and successful fee appeals. (citations omitted)

*Id.* at 53.

The most recent articulation of the Third Circuit on allowance of attorneys' fees under federal statute is suggestive of an equally liberal approach. In *Danny Kresky, supra,* the Court of Appeals reversed a lower court holding which reduced the time allowed in a fee award for preparation of the fee petition from 23.9 hours to 10 hours. The Court ordered that the full 23.9 hours "should be reinstated on remand" as part of the overall fee award. *Id.* at 219.

■ In applying the Third Circuit's rationale in *Prandini* and *Kresky* to fee awards in bankruptcy cases, we believe it is also necessary to compensate bankruptcy attorneys, whenever possible, at the highest rate of compensation available for their efforts. This approach is consistent with the intent of Congress as expressed in the legislative history of the Bankruptcy Reform Act of 1978 ("Code").[3] Although fee awards in bankruptcy matters were previously subjected to principles of economy under the Bankruptcy Act, the relevant standard for making fee awards is now more liberal under the Code. The purpose behind the departure from previous law has been described by Judge Lifland:

The relevant criteria for awarding attorney's fees was formerly governed by Bankruptcy Rule 219, which generally directed the courts to allow compensation giving "due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of the creditors". Thus an emphasis on principles of economy cut across all other considerations in formulating awards.

Fee awards are now governed by Section 330 of the Code which provides:

(a) After notice and a hearing; the court may award to the attorney for the debtor

(1) Reasonable compensation for actual, necessary services rendered based on time, nature, extent and value of such services and *the cost of comparable services other than in a case under this title,* and

(2) Reimbursement for actual, necessary expenses. (emphasis added)

This liberal standard of compensation marks a sharp cleavage from past practice which tended to preclude many highly qualified practitioners from entering the bankruptcy field. The rationale for the change is clearly set forth in the House Report on Section 330: *to encourage successful administration of estates by attracting bankruptcy specialists of high quality.* (footnotes omitted) (emphasis added)

*In re Penn-Dixie Industries, Inc.,* 18 B.R. 834 (Bkrtcy.S.D.N.Y.1982).

■ Accordingly, we will allow reasonable compensation to attorneys for preparation of fee applications and other services attendant to recovery of fees where a bankruptcy case involves a solvent debtor and there is no competing interest shown to exist between the claims of creditors and the request for an award of attorneys' fees from the debtor's estate. In the case at bench, counsel has requested fees of

---

**3.** *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

$8,698.50 for 146.1 hours of time devoted exclusively to recovery of attorney's fees. The time appears reasonable. Therefore, we will grant counsel's request and include $8,698.50 in the overall fee awarded for preparation and defense of fee applications before the Court.

## BONUS COMPENSATION

■■■■ The reasonableness of a request for counsel fees should be examined in light of the factors which other federal courts apply in awarding attorneys fees. These factors are:

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The 'undesirability' of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

*In re Absco, Inc.*, 23 B.R. 250, 251 (Bkrtcy. E.D.Pa.1982) *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) at 717–719. Where appropriate, a court may award bonus compensation (also referred to as "premium or enhancement" compensation) above the normal rate charged by an attorney if the attorney's skill, diligence and experience so merit, or if the results obtained were particularly favorable in view of the obstacles presented.

Bonus compensation for exemplary efforts by counsel is not a novel concept. It was available under the Bankruptcy Act even though the principle of strict economy prevailed. *See In re Aminex Corp.*, 15 B.R. 356 (Bkrtcy.S.D.N.Y.1981); *In re Penn Central Transportation Co.*, 23 B.R. 499 (D.C.E.D.Pa.1982); *Rose Pass Mines,*

*Inc. v. Howard,* 615 F.2d 1088 (5th Cir. 1980). With the advent of a more liberal standard of compensation under the Code, bankruptcy courts have looked with increasing favor upon requests for bonus compensation. *See In re Saxon Industries, Inc.*, 29 B.R. 319 (Bkrtcy.S.D.N.Y. 1983); *In re Penn-Dixie Industries, Inc.,* 18 B.R. 834 (Bkrtcy.S.D.N.Y.1982).

*In Penn-Dixie, supra,* Judge Lifland summarized the criteria for determining fee awards:

(1) *the quantity factor:* documented time spent and customary billing rates;

(2) *the quality factor:* the quality of advocacy required and delivered, taking into account the novelty and difficulty of the issues presented, skills called for, time constraints, and counsel's personal qualifications;

(3) *the result factor:* the bottom line amount recovered for the estate and its creditors (as well as the degree of speed from loss to recovery. (emphasis added)

18 B.R. at 838–839.

The applicable guidelines in the Third Circuit for awards of bonus compensation are set forth in the *Lindy Brothers Builders* cases.[4] The *Lindy* test has been described as follows:

Under these guidelines the court is required first to arrive at the objective value of the individual attorney's services by multiplying their hours of work by their normal billing rates per hour. The resulting basic or "lodestar" figure may be increased or decreased depending upon the applicability of other factors, primarily the contingent nature of success in the litigation and the quality of the attorneys' efforts.

*Shlensky v. Dorsey,* 574 F.2d, 131, 151 (3d Cir.1978).

Using the twelve *Johnson* factors enumerated above and the *Lindy* test from the Third Circuit, we have determined that an

---

**4.** 487 F.2d 161 (3d Cir.1973); 540 F.2d 102 (3d Cir.1976).

award of bonus compensation is appropriate in this case.

■ The reluctance of the debtor to come forward with the financial information required by the Code made this case a difficult one. From the outset, counsel for the Creditors' Committee took the necessary steps to uncover financial information about the debtor and secure the highest amount of payment possible for the creditors.

In the early part of May 1983, the debtor decided to obtain new counsel. The law firm of Pechner, Dorfman, Wolffe, Rounick & Cabot was authorized to represent the debtor in place of Levi Evans, Esquire. Shortly after the entry of new counsel into the case, the debtor moved to dismiss the case and offered to pay all creditors in full. Counsel for the debtor has stated that this decision was in part due to the skillful representation of Mr. Pierce as counsel for the Creditors' Committee:

> "It is conceded that Mr. Pierce is a skilled bankruptcy lawyer and his efforts on behalf of the Committee ultimately convinced the debtor that Levi Evans was inadequately representing the debtor in this proceeding."

The other factor in the decision was that the debtor's schedules reflected more assets than liabilities. Of course, the motion for appointment of a trustee and motion for turnover of additional assets were also pending. The outcome of the debtor's offer to pay all creditors in full was a settlement agreement whereby creditors were paid the full amount of their claims plus interest from an escrow account. Counsel fees for counsel for the Creditors' Committee were also escrowed.

We are convinced that the results ultimately obtained on behalf of the creditors are due to the skill and diligence of counsel for the Creditors' Committee. It appears that the skillful representation of creditors by counsel was the major factor leading to settlement of this case, thus enabling the debtor to avoid long and costly litigation over the appointment of a trustee and turnover of concealed assets.

■ We are not persuaded by the debtor's argument that counsel's representation of the Committee beyond the time when the settlement offer was made was "overzealous" and a "last gasp" representation. For one reason, a settlement offer does not become a settlement agreement until all parties have agreed and all terms have been agreed upon. Furthermore, counsel for the debtor began soliciting separate agreements with each creditor without counsel for the Creditors' Committee being present, which not only added to the difficulty of protecting the interests of creditors as a whole, but was highly questionable in the view of the Court. We believe counsel for the Creditors' Committee had good reason to proceed cautiously and not immediately abandon its efforts when the settlement offer was made, in light of the past history of this debtor. Counsel's actions may have entailed additional expenditures of time. But we view these services as part of the diligent and effective pursuit of counsel's responsibilities, which were to insure that the interests of all creditors were protected equally and fairly.

In the case at bench, Duane, Morris & Heckscher has requested compensation for 179.5 hours of work performed by two (2) partners, three (3) associates and six (6) legal assistants at the hourly rate of $200. Although compensation at the standard billing rates of these members of the firm would result in a fee award of $18,119 because most of the work was performed by associates, we have decided to award bonus compensation for all 179.5 hours because of the exemplary efforts of counsel in this case. Therefore, we find that counsel is entitled to a fee award of $35,900 at the rate of $200 per hour for those hours listed in the first and second fee applications totaling 179.5.

## DUPLICATION OF SERVICES

In the debtor's response to the first fee application of counsel for the Creditors' Committee, the debtor claims that approximately fifteen (15) hours of consultation time between partners and associates at

Duane, Morris & Heckscher should be disallowed on the basis of "duplication of services".

A bankruptcy court's concern with duplicative services was aptly expressed by Judge Anderson in the case of *In re Liberal Market, Inc:*

> Of particular concern in a situation involving counselors acting jointly in a single capacity is the inherent potential for a double charge for the same service by each of the co-counsel. *Cle-Ware Industries, Inc. v. Sokolsky, supra,* [493 F.2d 863] and *In re Crutcher Transfer Line, Inc., supra,* [20 B.R. 705] at 710. A debtor's estate should not bear the burden of a duplication of services, and such duplication should be avoided by counsel on their own initiative and, if nevertheless documented by the record, disallowed by the Court as "unnecessary" and therefore reflecting upon the *quantum meruit* value.

24 B.R. 653 (Bkrtcy.S.D.Ohio 1982).

We have examined the entries to which the debtor objects and find they do not fall into the category of duplicative services for two (2) reasons. First, in the majority of entries listing the service performed as "conference" with another attorney in the firm, the other attorney has not claimed compensation for the same time. Therefore, the debtor is not being charged twice for the same service. For example, Mrs. Rendell, a partner in the firm, has listed "Conference with Mr. Pierce" on April 13, 1983 for .4 hours. A review of Mr. Pierce's entries on that day show that Mr. Pierce did not claim compensation for the same .4 hours.

■ Second, when determining whether to deduct time for duplication of services, we believe it is necessary to also consider such factors as the frequency of the conferences and the length of time each entailed. When attorneys are consulting with each other on a daily basis and the conference lasts longer than one hour, we will deduct the entry of the senior attorney in the fee application providing both attorneys have claimed equal time for the conference.

Our review of the entries in the fee applications of counsel for the Creditors' Committee shows that all of the consultations between partner and associate were of modest length. No conferences lasted longer than one hour and most were well below that range.

In conclusion, we find that all consultation time between partners and associates in the case was reasonable and necessary, particularly in light of the difficulty of the issues involved during the early stage of counsel's representation of the Creditors' Committee. Therefore, no time will be deducted from the final fee award for duplication of services.

## GUIDELINES FOR PREPARING FEE APPLICATIONS

Having decided the value of the legal services performed, we have only to determine whether counsel has provided adequate documentation for these services in the fee applications. Upon review of the fee applications, we find that some of the entries do not meet the standards required by the Third Circuit for the preparation of fee applications. *In re Meade Land and Development Co.,* 527 F.2d 280 (3d Cir. 1975) and 577 F.2d 858 (3d Cir.1978).

■ The problems noted in the applications fall into three (3) main categories: (1) lumping, (2) lack of specificity, and (3) non-legal services. "Lumping" is the term used to refer to entries which contain several services under one general time expenditure. It is impossible for the Court to accurately determine from such entries whether the services were rendered within reasonable time periods. *See In re Nation/Ruskin, Inc.,* 22 B.R. 207 (Bkrtcy.E. D.Pa.1982).

The fee applications before us contain 11.9 hours of "lumped" entries, 3 hours of entries lacking in specificity, and 1.2 hours of entries listing a non-legal service which should not be compensable at the billing rate of an attorney. We have listed each entry disallowed and the reason for the disallowance beside the entry in a summary

sheet attached to this Opinion. *See* Exhibit B. Although the entries disallowed because the services contained therein were non-legal in nature may not be amended, there are 14.9 hours of entries which may be amended. Upon the submission of detailed amendments for these entries, counsel may recover additional fees for 14.9 hours.

A complete summary of the fees awarded to Duane, Morris & Heckscher, broken down by category, is also attached to this Opinion. *See* Exhibit A. The Court has arrived at the figure of $41,454.50 as a fair and reasonable fee for the legal services performed in this case on the basis of the fee applications already submitted.

## REIMBURSEMENT OF EXPENSES

Counsel has requested reimbursement of expenses in the following amounts:

| | | |
|---|---|---|
| (1) | Printing and duplicating | $ 108.20 |
| (2) | Toll telephone/conference calls | 22.14 |
| (3) | Legal Lexis | 127.96 |
| (4) | Dinner—local | 10.00 |
| (5) | Overtime | 103.79 |
| (6) | Filing Fees | 11.00 |
| (7) | Witness Fees | 30.00 |
| (8) | Deposition Transcripts | 486.75 |
| (9) | Miscellaneous | 11.75 |
| TOTAL | | $1,013.23 |

■ In order to apply for reimbursement of expenses under Section 330(a)(2) of the Bankruptcy Code, a law firm's expenses must be both *actual* and *necessary*. 11 U.S.C. § 330.

■ In the case before us, we will allow reimbursement of $527.75 for filing fees, witness fees and transcript costs because they appear to be actual and necessary expenses of the type contemplated by drafters of the Code. However, duplicating, telephone, and lexis costs are viewed by the Court as costs of doing business and hence, not reimburseable from the estate within Section 330(a)(2). *See Horn & Hardart Baking Company*, 30 B.R. 938, 939 (Bkrtcy.E.D.Pa.1983).

■ Also, the Court should not have to speculate about the nature of entries such as "Miscellaneous" and "Dinner-Local". If counsel does not document a request for reimbursement with some explanation of the purpose of the expenditure, it will not be allowed by the Court.

Having disallowed the expenses listed other than filing fees, witness fees and transcript costs, we find that counsel for the Creditors' Committee is entitled to reimbursement of costs in the amount of $527.75.

## EXHIBIT A

### SUMMARY OF FEES AWARDED TO DUANE, MORRIS & HECKSCHER, ESQUIRES

| | | |
|---|---|---|
| FEE FOR WORK PERFORMED ON BEHALF OF CREDITORS' COMMITTEE AT BONUS COMPENSATION RATE | (179.5 hours × $200) | $35,900.00 |
| FEE FOR .7 HOURS CONTAINED IN FOURTH APPLICATION AT STANDARD BILLING RATE | ( .7 hours × $95 ) | 76.00 |
| FEE FOR PREPARATION OF FEE APPLICATIONS | (146.1 hours @ standard rates) | 8,698.50 |
| | TOTAL | $44,674.50 |

DEDUCTIONS

| | | |
|---|---|---|
| LUMPING (compensable if amended) | ( 11.9 hours × $200) | $ 2,380.00 |

| | | |
|---|---|---|
| LACK OF SPECIFICITY (compensable if amended) | ( 3.0 hours × $200) | 600.00 |
| NON—LEGAL SERVICE, e.g., "FILING" (non-compensable) | ( 1.2 hours × $200) | 240.00 |
| | TOTAL | $ 3,220.00 |
| | NET TOTAL | $41,454.50 |
| COSTS | TOTAL | $ 527.75 |

## EXHIBIT B

| ATTORNEY | DATE | NATURE OF SERVICE RENDERED | TIME DEDUCTED |
|---|---|---|---|
| DAVID T. SYKES, ESQ. | | | |
| | 5/19/83 | Conference and telephone calls regarding the best course of action in this bankruptcy proceeding | 2.5 (Lumping) |
| | 5/26/83 | Conference regarding the position of the debtor in respect to all creditors | 1.8 (Lack of specificity) |
| MARJORIE O. RENDELL, ESQ. | | | |
| | 4/26/83 | Conference with Mr. Pierce | .2 (Lack of specificity) |
| JOHN P. HORSTMANN, ESQ. | | | |
| | 4/5/83 | Correspondence with Mr. Bochetto, member of the Creditors' Committee; conference with Mr. Pierce regarding objections to the extension of time to file a plan. | .5 (Lumping) |
| | 4/6/83 | Reviewing petitions and objections; correspondence with Mr. Bochetto. | .5 (Lumping) |
| | 6/2/83 | Revising letter to Creditors, conference with Mr. Pierce | .3 (Lumping) |
| | 6/3/83 | Revising Settlement Agreement, conference with Mr. Pierce | .7 (Lumping) |
| GEORGE E. PIERCE, JR., ESQ. | | | |
| | 4/18/83 | Administration, opening and organizing new file for the Committee and transfer of material from Kirk file | .7 (Non-Legal) |
| | 5/13/83 | Reviewing and revising correspondence to Mr. Gibson regarding the proposal of workout, and conferring with Mr. Sykes regarding the terms of Mr. Gibson's proposal for recommendation to the Committee. | .3 (Lumping) |
| | 5/13/83 | Further conference with Mr. Sykes | .3 (Lacks Subject matter) |

| ATTORNEY | DATE | NATURE OF SERVICE RENDERED | TIME DEDUCTED |
|---|---|---|---|
| | 5/19/83 | Telephone call with Mr. Gibson and confer with Mr. Sykes | .5 (Lumping) |
| | 5/19/83 | Telephone call with Mr. Gibson and memos regarding settlement proposal | 1.0 (Lumping) |
| | 5/20/83 | Telephone call with Mr. Gibson and conference with Mr. Horstmann regarding debtor's proposed settlement agreement | .6 (Lumping) |
| | 5/20/83 | Reviewing memoranda | .1 (Lacks specificity) |
| | 5/20/83 | Filing subpoenae. | .1 (Non-legal) |
| | 5/24/83 | Reorganization of files, evidence, etc., after hearing | .2 (Non-legal) |
| | 5/26/83 | Telephone call with Mr. Gibson regarding security and telephone call with the court to cancel the hearing. | .4 (Lumping) |
| | 6/3/83 | Telephone calls and meetings regarding notice to creditors | .2 (Lacks specificity Lumping) |
| | 6/6/83 | Telephone call and memorandum regarding additional funds for the escrow account. | .1 (Lumping, also lacks specificity) |
| | 6/8/83 | Reviewing memoranda and correspondence to New York attorneys and telephone call to Mr. Barasch regarding the potential Losito claim. | .2 (Lumping) |
| | 6/10/83 | Telephone calls to Kirk, Bitonti and Bochetto, four telephone calls to Mr. Gibson, drafting letters to creditors regarding distribution and calculations regarding disbursements. | 1.3 (Lumping) |
| | 6/13/83 | Telephone calls to Mr. Mantz and Mr. Bochetto and all other creditors regarding amount of payout, correspondence to Judge King and Mr. Gibson, and drafting correspondence regarding distribution. | 1.6 (Lumping) |
| | 6/13/83 | Telephone call with Mr. Downey regarding Ray's Air Conditioning Co. claim, and amending correspondence to Mr. Gibson. | .1 (Lumping) |
| | 6/14/83 | Telephone call regarding Miss Kirk's claim and release and correspondence to Judge King. | .1 (Lumping) |

| ATTORNEY | DATE | NATURE OF SERVICE RENDERED | TIME DEDUCTED |
|---|---|---|---|
| | 6/16/83 | Telephone call with Judge King's Clerk regarding the approval of prepetition interest stipulation and draft correspondence to Judge King | .4 (Lumping) |
| | 6/16/83 | Telephone call with Mr. Gibson. | .2 (Subject matter) |
| | 6/17/83 | Telephone call with Mr. Gibson. | .1 (Subject matter) |
| | 6/21/83 | Reviewing correspondence from Mr. Mantz regarding Audio Techniques and drafting correspondence to Mr. Gibson regarding approval of the claim. | .1 (Lumping) |
| | 6/21/83 | Telephone call with Mr. Gibson and correspondence to Mr. Gibson regarding disbursements. | .5 (Lumping) |
| | 7/15/83 | Reviewing correspondence | .1 (Subject matter) |
| | 8/1/83 | Drafting correspondence to L. J. Lichtenstein. | .2 (Subject matter) |
| | 8/3/83 | Filing Motion for Escrow of Additional Funds. | .1 (Non-legal) |
| | 9/20/83 | Filing Voluntary Withdrawal of Motion for Additional Escrow Funds. | .1 (Non-legal) |

TOTAL DEDUCTIONS                                                                 16.1 HOURS