**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**No. 70–250–M.**

United States District Court,
D. Massachusetts.

July 25, 1985.

Ralph J. Moore, Jr., Shea & Gardner, Washington, D.C., for petitioner.

Benjamin H. Lacy, Hill & Barlow, Boston, Mass., Counsel to Manager of Segregated Account.

## MEMORANDUM OPINION

On Petition of Ralph J. Moore, Jr., for Allowance of Compensation in Proceedings Relating to Attorney Fees and Appointment of Counsel

FRANK J. MURRAY, Senior District Judge.

In this petition Ralph J. Moore, Jr. seeks allowance of compensation out of the Debtor's estate for time expended in preparing and submitting fee petitions to this court, and in prosecuting a mandamus petition in the Court of Appeals. Petitioner, other attorneys and certain paralegals in the law firm of Shea & Gardner seek an allowance of compensation for 1126.25 hours of attorneys' time and 251.25 hours of paralegal time in the amount of $155,544.00, and disbursements in the amount of $1,430.08. The claim for compensation and reimbursement relates to the preparation of the fee petitions for services rendered as special counsel to the Trustees, heretofore submitted to the court,[1] and the preparation of this petition. The Manager of the Segregated Account, the sole Trustee of the Debtor's estate, opposes allowance of the compensation and reimbursement sought.

No petition of similar import for compensation has been presented to the court at any time by a claimant for attorney's fees during the Boston and Maine Corporation reorganization proceedings. A request of similar import which had been made part of an application for compensation by another petitioner was withdrawn. In *In the Matter of New York, New Haven & Hartford R. Co.*, 421 F.Supp. 249, 257 (D.C.Conn. 1976), a railroad reorganization case under Section 77, the court refused to allow compensation for the time spent by special counsel in the preparation and presentation of his fee petition. No other case has been brought to the court's attention in which a court supervising a railroad reorganization was faced with a petition of similar import.

Petitioner has presented several arguments in his Memorandum (dated April 12, 1985) in support of his petition. At the outset, he asserts the existence of a "general rule", based mainly on Federal civil rights cases cited in his Memorandum, entitling him to recover the compensation requested. The opposition of the Manager to the requested compensation is grounded, generally, on contentions that the services described in the petition were not rendered to the Debtor, were not of benefit to the Debtor's estate, and were exclusively for the benefit of the Petitioner. The court discusses the arguments and contentions below.

### A.

Reliance by the Petitioner on an asserted "general rule", based mainly on civil rights cases, entitling him to recover compensation for preparing and presenting his fee petitions, and for legal proceedings taken in pursuit of his compensation, is misplaced in the context of the Boston and Maine reorganization. The role of special counsel in railroad reorganizations under Section 77 is totally unlike that of the civil rights attorney, or that of the attorney awarded fees in patent and anti-trust cases and securities class actions, and under the Equal Access to Justice Act, the Toxic Substance Control Act and the Voting Rights Act. Moreover, a vast difference exists between the public policy objectives of Section 77 and those of Federal civil rights acts or other statutes cited by Petitioner under which attorneys were awarded compensation for preparing and defending fee petitions. Cases awarding fees to parties (a) when the opposing party has acted maliciously, or arbitrarily, or (b) when they have undertaken the role of private attorney general do not address the rationale for awarding compensation under Section 77, discussed below, and, therefore, are not applicable to the instant petition.

---

1. It is not disputed that on said fee petitions the court made, and the Petitioner was paid, allowances for

   (a) legal services rendered in the amount of $394,601.29,

   (b) paralegal expense in the amount of $13,911.47, and

   (c) other expenses in the amount of $38,011.36, totalling $446,524.12. *See* Appendix A annexed hereto.

■ The statute governing allowance of compensation to special counsel in Section 77 railroad reorganizations [2] establishes a broad zone of discretion to enable the reorganization court to determine whether certain activities or expenditures by special counsel, when viewed generally or in the context and totality of the particular reorganization, were intended to be compensated or reimbursed out of the debtor's estate. This exclusive control by the court over allowance of compensation and disbursements promotes the public policy objectives of Section 77, which are to conserve the debtor's assets for the benefit of *all* creditors and to preserve an ongoing railroad in the public interest, *New Haven Inclusion Cases*, 399 U.S. 392, 431, 90 S.Ct. 2054, 2078, 26 L.Ed.2d 691 (1970), and such exclusive control is "in recognition of the effect which a depletion of the cash resources of the estate may have on both the fairness and feasibility of the plan of reorganization," (citation omitted), *Brown v. Gerdes*, 321 U.S. 178, 181, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944).

■ As a court of bankruptcy, the reorganization court's exercise of its discretion as to allowances may not be precluded, or in any sense limited, by statements of officers of the court or officers of the bankrupt corporation, testimony of expert witnesses, or agreements among attorneys.[3] In every application for compensation and disbursements presented in this reorganization, it is for the court only to determine the threshold question of tangible benefits, if any, conferred upon the estate by the activities of the applicant for compensation. *See Dickinson Industrial Site, Inc. v. Cowan*, 309 U.S. 382, 389, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940); *In re Citizens Mortgage Investment Trust*, 37 B.R. 813, 819 (Bkrtcy.D.Mass.1984).

---

**2.** Section 77 of the Bankruptcy Act (1898), as amended (11 U.S.C. § 205(c)(2)[S4] ). The provisions of the Bankruptcy Reform Act of 1978 are not applicable to this reorganization. *See* 11 U.S.C. prec. § 101 (1978) (Savings Provisions).

**3.** *See* 3A Collier on Bankruptcy ¶ 62.05[3] (14 ed. 1977); *In the Matter of Erie Lackawanna Railway Co.*, 558 F.2d 339 (6th Cir.1977); *Cf.*

■ Unlike special counsel in Section 77 railroad reorganizations, whose role is that of an officer of the court appointed to carry out assignments by the court, and who is held to fiduciary standards, *see Brown v. Gerdes*, 321 U.S. at 182, 64 S.Ct. at 489, the attorney in a Federal civil rights case, for example, is an advocate representing a private citizen. In such case, the statutory allowance under the Fees Act, 42 U.S.C. § 1988, is made to "promote the enforcement of the Federal civil rights acts, as Congress has intended, and to achieve uniformity in those statutes and justice for all citizens". H.R.Rep. No. 1558, 94th Cong., 2d Sess. 9 (1976). *See also* S.Rep. No. 1011, 94th Cong., 2d Sess. 2 (1976), U.S. Code Cong. & Admin.News 1976, 5908, 5910 ("fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."). *See generally Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). When an attorney's fee is awarded under the Fees Act, it is payable not out of a fund that is held in the custody and control of the court; rather, payment is assessed against the person or persons held liable for the civil rights violation. *See Grendel's Den, Inc. v. Larkin et al.*, 749 F.2d 945 (1st Cir.1984).

In sum, there is no significant relation between the public policy purposes of the compensation provisions of the civil rights acts or other acts cited by Petitioner and the public policy objectives of Section 77. Neither these acts nor the decisions in the cases under the acts lend any support to an asserted "general rule" which is or should be applicable to this reorganization in aid of Petitioner's claim.

### B.

Bankruptcy Rule 8–212 [4] required the Petitioner to file with the court a detailed

---

*Leiman v. Guttman*, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453 (1949); *Brown v. Gerdes*, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944); *Dickinson Industrial Site, Inc. v. Cowan*, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819 (1940).

**4.** The Advisory Committee's Note inserted following Rule 8–212 recites in part: "This rule is derived from § 77(c)(2)(S4), § 77(c)(12), and Rule 10–215."

application when he sought compensation for services and reimbursement of expenses out of the Debtor's estate in this reorganization. The requirements of Rule 8–212 were prescribed by the Supreme Court and reported by it to the Congress, pursuant to 28 U.S.C. § 2075, on April 26, 1976. Petitioner contends that the provisions of the bankruptcy laws which require such detailed statement in the application, "are premised on Congress' view that they are beneficial to the [bankrupt] estate". (Petitioner's Memorandum at 6). There is neither Congressional declaration nor legislative history that gives support to an attorney's claim for compensation for services devoted to preparing and filing a Rule 8–212 application. To the contrary, the legislative history of the Bankruptcy Act, as amended, and the history of the General Orders in Bankruptcy which preceded the Rules, including Rule 8–212, reflect the development of measures designed to secure closer judicial control over administration expenditures, as Congress intended.[5] The Bankruptcy Act, as amended, and the Bankruptcy Rules also reflect the correlative duty of the attorney for the trustee to provide the information required by Rule 8–212 to "enable the court better to determine whether or not the services as rendered justify compensation out of the estate, and, if so, their value to the estate". *See* 3A Collier on Bankruptcy ¶ 62.12[9] (14th ed. 1977); *id.* at ¶ 62.02. *Cf. Leiman v. Guttman,* 336 U.S. 1, 9, 69 S.Ct. 371, 374, 93 L.Ed. 453 (1949); *In re J.M. Wells, Inc.,* 575 F.2d 329, 331 (1st Cir.1978).

■ When ordering payment to Petitioner of the amounts shown in Appendix A hereto, the court made allowances of what it determined to be fair and reasonable compensation for legal and professional services, and for disbursements, which benefited the Debtor's estate. The services for which that compensation was allowed were rendered by Petitioner as special counsel to the Trustees in the interest of the beneficial owners of the estate, *viz.,* the creditors, in whose behalf the Petitioner purported to act. In such case, allowances for compensation and for disbursements are properly chargeable against the estate.

■ In the instant petition the Petitioner seeks compensation which rests upon a different premise. Although the words "services benefiting the estate" used by Petitioner are the same, the Petitioner did not purport to act in behalf of the creditors when devoting his efforts to the preparation of the fee petitions. Moreover, his efforts expended in complying with the Rule conferred no tangible benefit on the creditors. That compliance with the Rule is designed to enable the court to determine a proper allowance for compensable services and reimbursable expenses, and is a prerequisite to compensation, does not alter the focus of Petitioner's efforts and does not entitle him to charge the estate for his time and efforts spent in preparing the fee petitions.

Some of the bankruptcy cases cited by Petitioner which make allowances for the preparation or defense of fee petitions, or both, are governed by the Bankruptcy Reform Act of 1978 (the "Bankruptcy Code");[6] others, which are governed by either the Bankruptcy Act of 1898, as amended, or the Bankruptcy Code, are cases in which the creditors had been made whole before the request for compensation was made.[7] The cases in footnote 6, decided under Section 330(a) of the Bankruptcy Code, are not applicable to this reorganization,[8] and the cases in footnote 7 are substantially distinguishable on their facts

---

**5.** *See* S.Rep. No. 989, 95th Cong., 1st Sess. 40, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5826.

**6.** *In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985); *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 12 B.C.D. (C.R.R.) 978 (Bkrtcy.D.Utah 1985); *In re Erewhon, Inc.,* 21 B.R. 79 (Bkrtcy. D.Mass.1982).

**7.** *Matter of Braswell Motor Freight Lines, Inc.,* 630 F.2d 348 (5th Cir.1980); *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088 (5th Cir.1980); *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768 (Bkrtcy.E.D.Pa.1984).

**8.** *See* note 2 *supra.*

from this reorganization by the effect which an allowance for the preparation and defense of fee petitions would have on the treatment of the creditors.

In the many requests for allowance of fees presented to the court in this reorganization, none, with the exception noted earlier, has sought compensation or reimbursement for expenses for preparation of fee petitions. The court has been satisfied throughout its many years on the bench that there is no dearth of competent lawyers willing to accept appointments in bankruptcy cases absent the added incentive of compensation for preparing fee petitions. Furthermore, as the Manager points out, there are numerous cases, decided under the Bankruptcy Act of 1898, as amended, and the Bankruptcy Code, which decline to award the added compensation of the character requested here.[9]

### C.

Petitioner argues that his petition here is to be distinguished from similar requests in other bankruptcy cases because of the claimed extraordinary efforts and time expended in the mandamus proceeding. None of the statutory provisions applicable to Section 77 railroad reorganizations, or the General Orders in Bankruptcy, or the rules in bankruptcy applicable to this reorganization, furnishes any support for Petitioner's claim for compensation and reimbursement of expenses out of the Debtor's estate in connection with the mandamus proceeding. The Petitioner's efforts in that proceeding were not rendered in behalf of the creditors, or in the interest of the Debtor's estate, and Petitioner's efforts conferred no benefit on either the creditors or the estate. Moreover, there is no basis in the record to support the Petitioner's assertion that his firm *"had* to expend [time] ... to establish the right of special counsel retained by the Trustees to be com-

pensated". (Emphasis in original). (Petitioner's Memorandum at 4). Undeniably, "the court was confronted with a troublesome point on which any court might legitimately have entertained some concern ... about any apparent departure from the strict rules that prevail ...", *In re Certain Special Counsel to the Boston and Maine Railroad,* 737 F.2d 115, 120 & n. 6 (1st Cir.1984); however, no order had been entered by the court denying Petitioner compensation at any time. There is no justifiable basis for a charge of fees or expenses, related to the mandamus proceeding, against the creditors or the Debtor's estate. There are no circumstances existing here that militate against the unrestricted application of the traditional American Rule that a party involved in civil litigation must bear his own costs, including the cost of attorneys' fees. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 269–71, 95 S.Ct. 1612, 1627–29, 44 L.Ed.2d 141 (1975).

### D.

Petitioner also seeks to distinguish this petition from those in other bankruptcy cases on account of the claimed magnitude of benefits resulting to the Debtor's estate from his services. In his argument referring to the claimed benefits, Petitioner adds that his efforts "saved the railroad approximately $25 million, and were 'sine qua non' of the successful reorganization". (Petitioner's Memorandum at 5).

It was never made clear to the court whether the claimed $25 million was intended to represent gross savings or net savings to the Debtor's estate. The $25 million was mentioned at the August 15, 1984 hearing, as were certain revisions of that figure to lesser amounts. The $25 million, or the lesser amounts, was never shown to

**9.** *See In re Citizens Mortgage Investment Trust,* 37 B.R. 813 (Bkrtcy.D.Mass.1984); *In re Four Star Terminals, Inc.,* 42 B.R. 419 (Bkrtcy.D.Alaska 1984); *In re Hotel Associates, Inc.,* 28 B.R. 332 (Bkrtcy.E.D.Pa.1983); *Matter of Liberal Market Inc.,* 24 B.R. 653 (Bkrtcy.S.D.Ohio 1982); *In re Absco, Inc.,* 23 B.R. 250 (Bkrtcy.E.D.Pa. 1982); *In re Pacific Homes,* 20 B.R. 729 (Bkrtcy.

C.D.Cal.1982); *Matter of Seatrain Lines, Inc.,* 21 B.R. 194 (Bkrtcy.S.D.N.Y.1982); *In the Matter of New York, New Haven & Hartford R. Co.,* 421 F.Supp. 249 (D.C.Conn.1976); *In re Imperial "400" National, Inc.,* 432 F.2d 232 (3rd Cir.1970); *United States v. Larchwood Gardens, Inc.,* 420 F.2d 531 (3rd Cir.1970).

be completely made up of "hard" figures taken from earnings records of the Debtor; they were estimates only. Estimates given at other hearings on the Trustees' petitions for authority to comply with certain labor agreements appear to be at variance with the August 15, 1984 estimates. Whatever were the savings actually realized from the arbitration award,[10] they were *not* perceived at a critical stage of Debtor's operations in April 1983[11] (less than three months prior to the consummation date) as a dependable source of the Debtor's working cash, or of sustaining the Debtor's operations. While the savings resulting from the award may have offset to an extent the cost of employee wage increases, both retroactive and prospective (as the president of the corporation hoped they would), there is no persuasive evidence whether or as to what extent the savings may have offset other operating costs incurred by Debtor and terminated on the consummation date. A review of the reorganization process from November 1980 to June 30, 1983, the consummation date, leads to the conclusion that the claim of the amount of savings to the Debtor, to the extent mentioned at the August 15, 1984 hearing, lacks the support of reasoned summation of persuasive evidence.

Compensation has been awarded to other persons who rendered services to the Debt-

or beneficial to the estate at critical stages of the reorganization process. It is fair to state that the efforts of all persons, including those of Petitioner, involved in the significant steps taken from the time this court decided to continue the reorganization of the Boston and Maine railroad under Section 77,[12] were important in the ultimate reorganization. To present a catalog of such events would unnecessarily extend this Memorandum Opinion—critical events[13] are familiar to those who have followed the reorganization with interest. The court has never deemed it necessary or expedient to grade the importance of the benefits conferred by each of these persons upon the Debtor's estate and its beneficial owners. No scores have been recorded which would suggest the comparative measures of importance of the benefits conferred. Were such ratings to be made, more than one person may rightfully argue for a place at center stage.

### E.

The arguments constructed by Petitioner "that creditors will not be affected whether this petition is approved or denied", and that "responsibility for the fees [sought on this petition] will lie with the reorganized railroad" suffer from misleading simplism.

---

**10.** The savings were estimated to result from these sources: (1) principally from crew consist reductions, (2) from the freeze of arbitraries at the 1977 wage rates, (3) from the establishment of spare boards, so called, and (4) from the reduction of yard overtime.

**11.** On April 25, 1983 the Trustees sought authorization from the court to draw down from restricted funds $3.5 million cash to enable them "to make certain payments which we are required to make, most notably the payment of the back time to our engineers and trainmen without totally depleting our working cash and putting us in a position where we could not carry on the business of the debtor". (Tr., Hearing on Petition for Order No. 723, at 8). The Trustees did not know of another available source of the needed cash of $3.5 million. *See id.* at 14.

**12.** *See In the Matter of Boston and Maine Corporation, Debtor,* 378 F.Supp. 68 (D.C.Mass.1974). *Cf. In the Matter of Erie Lackawanna Railway Co.,* 393 F.Supp. 352 (N.D.Ohio 1975) (reorgani-

zation proceeded under the Regional Rail Reorganization Act).

**13.** For example, when the Chairman of the Interstate Commerce Commission raised the question whether a 15-day supply of working capital would "be adequate for a railroad coming out of a reorganization during a recession ...", the response of Mr. Howard, counsel for Guilford Transportation Industries, Inc., emphasized that

Now, as a practical matter, we think it is really not feasible for the Commission to view Boston and Maine standing alone. In other words, the Commission really has to look at Boston and Maine associated with Maine Central. If the plan of reorganization is approved and [Guilford's] control application is not, the plan cannot be implemented in its present form because the $24 million payment by Guilford will not be made.

Tr., Hearing before Interstate Commerce Commission, April 7, 1982 at 10.

This estate is not yet closed. The nature of an administrative order permits its review by this court, on the court's own motion, as well as on motions of parties in interest, at any time before the estate is closed. As long as the rights of any of the creditors are disputed, it is the obligation of the court, acting independently, to see to the fair and equitable treatment of those creditors, and to the fair administration of the estate for the benefit of all creditors. *See Matter of Boston & Providence R. Corp.*, 673 F.2d 11, 13 (1st Cir.1982). Until all disputes are resolved, the total dollar amount of the creditors' claims cannot be calculated, and, consequently, the total dollar amount of Series D Certificates of Contingent Interest cannot be determined. Furthermore, if an allowance of fees and disbursements were to be made on this petition, payment thereof would be made out of Debtor's estate. The Petitioner's arguments here are both premature and presumptuous.

### F.

This petition was not referred to the Interstate Commerce Commission ("Commission"), so that it might undertake the statutory duty provided in 11 U.S.C. § 205(c)(2)[S4] for the reasons which follow. When the court initially reviewed the petition upon its submission, the services described therein appeared to the court to lack the characteristics of measurable benefits contributed by Petitioner to the entire estate and its beneficial owners, the identifying traits for an allowance of compensation to special counsel in a Section 77 proceeding. Had the court determined later that Petitioner's claims were compensable, the court would have referred the petition to the Commission to determine, in accordance with its statutory duty, the "maximum limits" of compensation allowable. However, further detailed examination of the petition and Petitioner's supporting memoranda confirmed the court's initial appraisal and thus, the petition was not referred to the Commission.

Upon consideration of the petition and its supporting memoranda, the opposition of the Manager, and the matters set forth in this Memorandum Opinion, the court determines that no allowance of compensation and for disbursements should be made. Accordingly, the petition for compensation and disbursements is disallowed.

*Appendix A*

The allowances made by the court to the Petitioner for legal and professional services rendered, and for disbursements, as special counsel to the Trustees are shown in the following table:

| Date Entry of Order | Proceedings in which Services were Rendered | Attorneys' Compensation | Paralegal Expense | Other Expenses | TOTAL |
|---|---|---|---|---|---|
| 10–14–84 | Arbitration Bd. No. 387 | $193,200.00 | $ 6,335.00 | $20,366.23 | $219,901.23 |
| 10–26–84) 11–13–84) | Lenfest v. B&M | 60,000.00 | 3,928.75 | 7,932.63 | 71,861.38 |
| 10–26–84) 11–13–84) | Carbone v. B&M | 25,055.04 | 1,181.21 | 4,042.61 | 30,278.86 |
| 11–06–84) 11–27–84) | Advice to Trustees | 39,641.25 | 880.63 | 4,164.36 | 44,686.24 |
| 12–28–84 | Mass. D.P.U. | 76,705.00 | 1,585.88 | 1,505.53 | 79,796.41 |
| | TOTAL | $394,601.29 | $13,911.47 | $38,011.36 | $446,524.12 |